AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of California

**FILED**

Apr 13, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

| | |
|---|---|
| In the Matter of the Search of )<br><br>Residence Located at: 1830 CAMPOS )<br>AVENUE, WOODLAND, CALIFORNIA )<br>95776 )<br>) | Case No.    2:22-sw-0273 KJN |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-1, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2251(1)(a) | Sexual Exploitation of Children |
| 18 U.S.C. §2252 | Possession and Transportation of Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice ___30___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/_____
*Applicant's signature*

Christopher Gecewicz, Special Agent, FBI
*Printed name and title*

Sworn before me telephonically.

Date: ___04/13/22___

City and state: ___Sacramento, California___

_____
*Judge's signature*

Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>1830 CAMPOS AVE., WOODLAND, CA 95776,<br><br>the Person of JACOB GUERRERO; and<br><br>2004 Gray Mitsubishi Eclipse, MA license 9ZJ436 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher Gecewicz, a Special Agent with the Federal Bureau of Investigation

("FBI") being duly sworn, state:


**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been

so employed since January of 2021.  I was trained as an FBI Special Agent at the FBI Academy

in Quantico, Virginia.  During my time training in Quantico, Virginia, I received specialized

training in the methodology of general law enforcement.  I am currently assigned to a Violent

Crimes Squad of the Sacramento Division of the FBI.  In my current assignment, I am

responsible for investigating and identifying child pornography and child exploitation crimes,

drug and gun possession crimes, among others.  I have participated in federal investigations

involving high technology or cybercrime, violent domestic crimes involving illegal gun and drug

trafficking, and threatening interstate communications.  I have performed law enforcement

related tasks such as executing state and federal search and arrest warrants, utilizing confidential

sources, coordinating undercover operations, and surveillance of subjects.  I have executed

search warrants that have involved the search and seizure of financial instruments, guns and

1

drugs, computer equipment, and proceeds from a crime.

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the residence of GUERRERO, 1830 CAMPOS AVE., WOODLAND, CA 95776 (the "SUBJECT PREMISES"), the person of JACOB GUERRERO, and a 2004 Gray Mitsubishi Eclipse, MA license 9ZJ436, currently being used by GUERRERO, further described in Attachments A-1, A-2, and A-3.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2251(a), relating to sexual exploitation of children, and Title 18 U.S.C. § 2252, relating to the possession and transportation of child pornography, have been committed by JACOB GUERRERO, and that evidence, fruits, and instrumentalities of this crime, as described in Attachment B, will be found at SUBJECT PREMISES, on the person of JACOB GUERRERO, and in his vehicle, further described in Attachments A-1, A-2, and A-3.

## STATUTORY AUTHORITY

5.      This investigation concerns alleged violations of Title 18 U.S.C. § 2251(a), relating to material involving the sexual exploitation of minors.  Title 18 U.S.C. § 2251(a) prohibits employing, using, persuading, inducing, enticing, or coercing any minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.  Title 18 U.S.C. § 2251(e) prohibits attempts and conspiracies to sexually exploit minors.

2

6. Title 18 U.S.C. § 2252(a)(1) prohibits the transportation of child pornography, and § 2252(a)(4)(B) prohibits the possession of child pornography.

## DEFINITIONS

7. The following definitions apply to this Affidavit:

a. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

b. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

c. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as

3

well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

        d.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

        e.      "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

        f.      "Computer software," as used herein, is digital information that can be interpreted by a computer and any of its related components to direct the way it works.  Computer software is stored in electronic, magnetic, or other digital form.  It commonly includes programs to run operating systems, applications, and utilities.

        g.      "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also

4

be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

        h.     "Minor" means any person under the age of eighteen years.  *See* 18 U.S.C. § 2256(1).

        i.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

        j.     "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  *See* 18 U.S.C. § 2256(2).

        k.     "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  *See* 18 U.S.C. § 2256(5).

## CHARACTERISTICS OF CHILD PORNOGRAPHERS

8.     My knowledge of preferential sex offenders and their characteristics is based on my experience as an FBI agent, and on training I have received at FBI training conferences focused on crimes against children. Based upon this training and experience, as well as upon information provided to me by other law enforcement officers, I am aware of the following general characteristics, which may be exhibited in varying combinations:

        a.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, from fantasies they may have viewing children engaged in sexual

activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from literature describing such activity. Due to the accessibility and availability of child pornography on the Internet, in my recent experience, instead of maintaining collections, some offenders engage in a pattern of viewing or downloading child pornography online and then deleting the material.

b.  Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children often use these materials for their own sexual arousal and gratification. They may also use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.  Individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, often at the collector's residence but increasingly also online through remote storage, to enable the individual to view the collection, which is valued highly.

d.  Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials. They rarely destroy correspondence from other child pornography distributors/collectors, and they conceal such correspondence as they do their sexually explicit material. Finally, these offenders often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in

contact and who share the same interests in child pornography.

    e.    Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

9.    On April 12, 2022, the United States District Court for the District of Massachusetts issued a Complaint and arrest warrant for GUERRERO charging him with the sexual exploitation of a child (and attempt), in violation 18 U.S.C. §2251.  The facts and circumstances underlying that Complaint are set forth in the Affidavit of FBI Special Agent Geoffrey Kelly, which is attached hereto as Exhibit 1, and the content of which is incorporated herein by reference.

10.    As more fully detailed in that affidavit, there is probable cause to believe that: GUERRERO has committed contact sexual offenses against minors while a juvenile (Exhibit 1, ¶11 n.1); in the Summer of 2021 GUERRERO has dressed in women's clothing in order to surreptitiously record others, including minors, using bathrooms and changing rooms at the Wrentham Premium Outlets in Massachusetts (Exhibit1, ¶¶4-7); in 2020, GUERRERO has surreptitiously recorded minor family members and family friends using the bathroom and shower, (Exhibit 1, ¶¶8-11); in the Spring of 2021, GUERRERO conducted surveillance and kept notes of his observations of multiple private homes in Massachusetts, including specific notes of times when children used the bathroom, went to bed, showered, or changed clothes (Exhibit 1, ¶¶18-22); in March of 2021, GUERRERO conducted surveillance of the home of "Minor A" on multiple occasions prior to recording a video of "Minor A," taking specific written

notes of when "Minor A" and her siblings changed clothes, showered, and went to bed (Exhibit 1, ¶19); in March of 2021, GUERRERO filmed more than one video at the home of "Minor A" (¶¶13-17); and on March 17, 2021, GUERRERO walked on to the property of "Minor A's" home, climbed onto a roof of a garage attached to the home, and outside of "Minor A's" bedroom window in order to record a video of Minor A at a time GUERRERO knew from his prior surveillance efforts that Minor A was likely to be unclothed (¶¶16-17, 19).

## The Subject Premises

11.     Investigators have spoken to Massachusetts state court officials concerning GUERRERO's pending criminal charges.  GUERRERO is currently on pre-trial release for state charges of photographing, videotaping, or electronically surveilling partially nude or nude persons, in violation of Massachusetts General Law, chapter 272, §105.

12.     Investigators have spoken to the state Probation officer overseeing GUERRERO's release.  GUERRERO reports to Probation that he is staying at the SUBJECT PREMISES, the home of his father.  GUERRERO recently represented to his probation officer that he obtained employment and has sent a paystub to Probation in Massachusetts which also listed the SUBJECT PREMISES as GUERRERO's address.

13.     GUERRERO's Probation officer reports that he is in contact with GUERRERO using phone number (530) 665-9964.[1]

---

[1] That is the same number assigned to the iPhone from which the materials described in Exhibit 1 were recovered.

14.     Federal agents conducting surveillance in California on April 12, 2022, observed GUERRERO leave the location where he has reported to Massachusetts probation that he is working, travel to the SUBJECT PREMISES, and enter the SUBJECT PREMISES.

15.     During the course of the Massachusetts state investigation, GUERRERO was observed on surveillance operating a 2004 Gray Mitsubishi Eclipse, MA license 9ZJ436.  Per Massachusetts records, the vehicle is registered to GUERRERO.  Agents conducting the above noted surveillance observed GUERRERO operating that vehicle.

## GUERRERO's Characteristics

16.     By report of the victim's parent, GUERRERO has been adjudicated delinquent for committing a contact sexual offense against a child while a juvenile.  GUERRERO has also gone to substantial efforts in order to surreptitiously record minors.  This conduct has included dressing in wigs and women's clothing in order to record female minors in bathrooms and changing rooms.  This conduct has also included conducting physical surveillance of private homes in order to document when minors are likely to be unclothed and has included climbing onto at least one private residence in order to record an 11 year-old girl, naked, in her second floor bedroom.

17.     This conduct has also included surreptitious recordings of minor family members and minor family friends as they used the bathroom and shower in the home of GUERRERO's mother in Woodland, California.

18.     If, as appears to be the case from his contact with Probation in Massachusetts, Guerrero possesses a cellphone, there is probable cause to believe that such an electronic device would contain evidence of the SUBJECT OFFENSE.  There is probable cause to believe that this could include additional copies of the recording of "Minor A," additional copies of surreptitious

9

recordings of individuals at the Wrentham Mall, and additional copies of his recordings of family members that have been retrieved from other devices and/or from "cloud" storage.

19.     For example, Apple, the company that produces the iPhone and iPad, provides a variety of services that can be accessed from different Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  Apple's iCloud service allows for remote storage and sharing of photos and videos.  iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.

20.     In addition, the forensic analysis of the iPhone seized by Massachusetts authorities from GUERRERO has revealed the presence of an application called "Secret Photo Album -SA," an application available through Apple's App Store.  That application advertises itself to allow an individual to "hide private photos & videos in a secret folder," and, for a fee, offers secure storage in the "cloud" allowing users to "access your photos and videos any time in the cloud using your email… [t]o sync photos and videos between devices and easily restore your data in case your device gets broken or lost…"

21.     Cloud storage using this, or a similar, application would allow GUERRERO to keep and store evidence of the subject offenses in "the cloud," where they might not be accessible through a forensic analysis of the content of the iPhone seized by Massachusetts

authorities.  Yet, those materials would remain available to him on any Apple device, and possibly, any computer, within the SUBJECT PREMISES.

22.     During a forensic examination of GUERRERO's phone seized after his arrest in Massachusetts, law enforcement found evidence that GUERRERO spent approximately $725 to buy spycams, including spycams designed to be hidden in bathrooms and as "phone chargers" plugged into outlets.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, THE INTERNET, AND EMAIL

23.     I have had both training and the experience and training of other law enforcement officers with whom I have had discussions in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

a.     Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other.  Computers basically serve four functions in connection with child pornography:  production, communication, distribution, and storage.

b.      Child pornographers can now transfer printed photographs into a computer-readable format with a device known as a scanner.  Furthermore, with the advent of digital cameras and smartphones with cameras, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer.  In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically, meaning that such have become sharper and crisper.  Photos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards often store 32 gigabytes of data or more, which

provides enough space to store thousands of high-resolution photographs and/or hours of video footage.  Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera.  The video files can be easily transferred from the camcorder to a computer.

      c.      A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.  Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

      d.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  In addition, there are numerous options available for the storage of computer or digital files.  One-Terabyte external and internal hard drives are not uncommon.  Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices which are plugged into a port on the computer.  It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage

12

devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them). Media storage devices can easily be concealed and carried on an individual's person.

        e.      The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

        f.      Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer or external media in most cases.

        g.      As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     As described above and in Attachment A-1, A-2, and A-3, this application seeks permission to search for records that might be found at the SUBJECT PREMISES and on the person of JACOB GUERRERO, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).  Agents will attempt to preview devices on-scene and use other methods to avoid the seizure of devices unrelated to this investigation.

25.     *Probable cause*.  I submit that if a computer or storage medium is found on the SUBJECT PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

     a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

     b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the storage medium that is not currently being used by an active file-for long periods of time before they are overwritten.  In

addition, a computer's operating system may also keep a record of deleted data in

a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media-in particular,

computers' internal hard drives-contain electronic evidence of how a computer

has been used, what it has been used for, and who has used it.  To give a few

examples, this forensic evidence can take the form of operating system

configurations, artifacts from operating system or application operation, file

system data structures, and virtual memory "swap" or paging files.  Computer

users typically do not erase or delete this evidence, because special software is

typically required for that task.  However, it is technically possible to delete this

information.

d.  Similarly, files that have been viewed via the Internet are sometimes

automatically downloaded into a temporary Internet directory or "cache."

26.     *Forensic evidence*.  As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic electronic evidence that

establishes how computers were used, the purpose of their use, who used them, and when.  There

is probable cause to believe that this forensic electronic evidence will be on any storage medium

found in the SUBJECT PREMISES and on the person of GUERRERO because:

a.  Data on the storage medium can provide evidence of a file that was once on the

storage medium but has since been deleted or edited, or of a deleted portion of a

file (such as a paragraph that has been deleted from a word processing file).

Virtual memory paging systems can leave traces of information on the storage

15

medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

16

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.   For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

27.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant.  The later review may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

28.     Based on the foregoing, there is probable cause to believe that evidence (described in more detail in Attachment B) of the transportation and possession of images depicting child pornography, as well as evidence, fruits, and instrumentalities of sexual exploitation of a child will be located at the premises, in the subject's vehicle, and on the person of the subject described in Attachments A-1, A-2, and A-3. Therefore, I request that the court issue the proposed search warrants.

## REQUEST FOR SEALING

29.     The United States hereby applies for an order directing that the search warrant, application, and supporting affidavit in the above-entitled matter be kept under seal until further order of the Court, or until the government determines that these materials are subject to its discovery obligations in connection with criminal proceedings, at which time they may be produced to defense counsel.  The United States requests that the above-described materials be sealed to avoid prematurely notifying the target of the investigation, which could prompt the target to flee or destroy the evidence.  Notwithstanding the request to seal, the Clerk's office may provide a copy of the application, search warrant and supporting affidavit to the U.S. Attorney's Office and to agents of the Federal Bureau of Investigation.  The government further requests that the executing agents or officers be permitted to provide a copy of the search warrant as required by Federal Rule of Criminal Procedure 41(f) and that the U.S. Attorney's Office may

provide a copy of the search warrant and affidavit to the defense attorney in discovery, without

further order of this Court, if federal criminal charges arise out of this investigation.

Respectfully submitted,

/s/

Christopher Gecewicz
Special Agent
Federal Bureau of Investigation

Sworn telephonically to me on April __13__, 2022

Kendall J. Newman
UNITED STATES MAGISTRATE JUDGE

Approved as to Form:

/s/ ROGER YANG

Roger Yang, Assistant United States Attorney

19

# EXHIBIT 1

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| JACOB GUERRERO | )   Case No.    22-6182-MPK |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____March 17, 2021_____ in the county of _____Norfolk_____ in the

_____ District of _____Massachusetts_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 2251 | Sexual Exploitation of a Child and Attempt |

This criminal complaint is based on these facts:

See attached Affidavit of FBI SA Geoffrey Kelly

❑ Continued on the attached sheet.

/s/ Geoffrey Kelly

_____
*Complainant's signature*

FBI SA Geoffrey Kelly
_____
*Printed name and title*

Sworn to before me telephonically pursuant to Fed. R. Crim. P. 4.1

Date:    _____04/12/2022_____

*Judge's signature*

City and state:    _____Boston MA_____      M. Page Kelley, Chief Magistrate Judge
_____
*Printed name and title*

### AFFIDAVIT OF SPECIAL AGENT GEOFFREY J. KELLY IN SUPPORT OF AN APPLICATION FOR A COMPLAINT AND ARREST WARRANT

I, Geoffrey J. Kelly, state:

### Introduction and Agent Background

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for twenty-six years. Prior to my employment with the FBI, I served for three years as a police officer with the Metropolitan Transportation Authority Police Department in New York City. Since February 1996, I have been assigned to the Boston Division of the FBI. I am currently assigned to the Lakeville Resident Agency in Lakeville, Massachusetts, where my primary duty is the investigation of violent criminal offenses. Prior to my current assignment, I worked for approximately eight years on the Boston FBI's Violent Crimes Task Force. Throughout my career, I have participated in hundreds of violent crime investigations and during these investigations, I have executed search and arrest warrants, utilized informants, interviewed witnesses, and conducted surveillances.   In connection with this case I have consulted with agents of the FBI and forensic experts with training and experience in the field of child exploitation offenses.

2.      I submit this Affidavit for the limited purpose of establishing probable cause to support a Criminal Complaint charging Jacob Guerrero with sexual exploitation of a child and attempt to do so, in violation of 18 U.S.C. §2251.

3.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

**Probable Cause to Believe That a Federal Crime Was Committed**

4.       On September 2, 2021, GUERRERO was arrested by the Wrentham, Massachusetts, Police Department on a state warrant issued for photographing, videotaping, or electronically surveilling partially nude or nude persons, in violation of M.G.L. c. 272, §105. The investigation leading to that arrest revealed that GUERRERO, while wearing a wig and women's clothing, had attempted, using pen cameras affixed to his shoes, to film women and girls at the Wrentham Premium Outlets using the bathrooms and store changing rooms.

5.       At the time of GUERRERO's arrest on September 2, 2021, officers also executed a state search warrant issued for GUERRERO's car, which revealed, among other things, an iPhone (serial #FFMWQP0MJC6C).   On or around September 7, 2021, state authorities obtained a search warrant to review the phone for "videos and images of unsuspecting victims in, nude, or partially nude that were surveilled and recorded at the Wrentham Village Outlets from July 31, 2021 to August 24, 2021."

6.       Analysis of the cellphone pursuant to that state search warrant revealed videos taken in the Wrentham Mall women's room as well as a dressing room of one of its stores. Employees of the store were interviewed, recognized GUERRERO, and reported that at least one customer had complained that GUERERRO had been waiving his foot at the dressing room while her teenaged daughter was changing.

7.       The analysis also revealed screen captures of apparent surreptitious recordings that had been created at locations outside of the Wrentham Mall in or around July 2020.   A further state search warrant was then obtained for all surreptitiously recorded videos on the iPhone.

2

**Discovery of Surreptitious Recordings of Minors by State Authorities**

8.      A further state search warrant, authorizing a search of GUERRERO's iPhone for all surreptitiously recorded videos, revealed evidence of clandestine video recordings depicting both adults and a number of apparent children under the age of 18, who did not appear to know they were being recorded.   The videos depicted the individuals in bathrooms, bedrooms, and other locations other than those that could be identified within the Wrentham Outlets.   The clandestine nature of the recordings is evident in several ways: (1) the positioning of the camera - static, in the same place un-moving, and often off center to what is being recorded – indicating a camera that was placed and then left; (2) the nature of the victim's behavior – the victims are captured engaging in highly private, but routine, actions, such as using the bathroom, undressing and showering, all of which is accomplished in normal fashion; and (3) the seeming unawareness of the victims – unlike recordings where the subject is aware of a camera or a person recording, the individuals recorded are never looking directly at the camera.

9.      Subsequent investigation and review of the forensic data for such videos has led investigators to identify the locations and some of the individuals depicted in the surreptitious recordings.   Several videos were recorded in July of 2019 when GUERRERO was on vacation in New Jersey and several others were recorded at GUERRERO's family home in California. The locations were identified by an individual, whose identity is known to law enforcement, who had been present at, and was familiar with, the locations depicted.

10.      By way of examples, in July of 2020 in California, two minor victims (among others) were secretly recorded in a bathroom. One video, approximately three minutes and two seconds long, depicts a male child who appears to be approximately 8 or 9 years old, who is

captured using the bathroom.   The minor's genitals were exposed while urinating. The male child was subsequently identified as a friend of a family member who had been living at the Guerrero home in California at the time.

11.     Other videos from that time period depict a female in her early teens.   There were several videos of that minor, depicting her going to the bathroom, showering, and changing clothing.   The videos depict the breasts and pubic area/genitals of the minor and the length of these video varies in length. The parents of that minor have identified their child based upon review of sanitized photos and have identified the location as the home of GUERRERO's mother's residence located in Woodland, CA. The minor in question would have been between 13 and 14 years old at the times these recordings appear to have been made.[1]

### The Federal Search Warrant

12.     On December 17, 2021, this Court issued a federal search warrant authorizing the search of the content of iPhone seized from GUERRERO's car, for, among other things, evidence of the sexual exploitation of children, and attempt to do so, in violation of 18 U.S.C. § 2251.

### GUERRERO's Recording of "Minor A"

13.     Among other things, a review of the content of the iPhone seized from GUERRERO's vehicle has revealed two videos recorded at or near the home of Minor A.

14.     The first of the video was taken from the side of Minor A's home located to the left of the home (if one were facing the front door).   The individual recording this video is positioned

---

[1] The parents of that minor have further disclosed that GUERRERO was adjudicated delinquent for a contact sexual offense against one of their minor children.   According to the parents, GUERRERO, age 14, had engaged in a sexual contact offense with their three- year-old child. Since the filing of the state charges in Massachusetts, the parents of that minor have made disclosures to the Davis, California police department that GUERRERO engaged in contact sexual offenses against another of their children when the minor was five years old.

4

a distance from the home.   Metadata reveals that the video was recorded on March 4, 2021 (the same date GUERRERO recorded written notes, detailed below, concerning his observations at the address of Minor A, ¶20), at approximately 8:09 p.m., using an iPhone 8 camera.[2]   The location information embedded in the metadata for the video places the individual recording the video in the area of the side yard of Minor A's home.

15.   The video is approximately one minute and thirty seconds long and captures the lit windows of the home and the lit front stairs of the home.   In the upstairs window, the silhouette of an individual can be seen inside the room.   The video appears to depict an individual who begins in a seated position and then stands as if pulling on pants or other clothing.

16.   The second video is a recording made by a person standing just outside of a different upstairs window of the home.   This window is located on the right-hand side of the home (as one faces it from the street) and in the back of the home.   To reach the position from which the video was filmed, the individual filming the video had to walk a distance from the street or from another property to reach the home, and then climb onto the roof of a garage attached to the home.   Metadata reveals that the video was recorded on March 17, 2021 at 8:07 p.m., using an iPhone 8 camera.   The location information embedded in the metadata for the video places the individual recording the video directly on top of Minor A's home, and, the video was created at exactly the same time and date on which GUERRERO wrote, as detailed below (¶20), "[y]oungest changes at 8:07."

17.   The video depicts the inside of a lit room appearing to be a child's bedroom.   The video is recorded by an individual positioned outside the window of the room from the exterior of

---

[2]  The phone seized from GUERRERO from which these videos were recovered is an iPhone 8.

the house viewing inward.   Despite the presence of blinds on the window, the individual filming can clearly see into the lit room, and the recording clearly depicts events occurring inside the room. The recording, which is under one minute, depicts Minor A, an 11-year-old female child, as she is getting undressed.[3]   The video captures Minor A undressing to the point of being completely naked.   At one point, as Minor A walks toward the window, naked, the video reflects that the person holding the camera crouched, as if seeking to avoid being seen by Minor A.   As the individual crouches, the camera angle radically changes, reflecting how close the individual filming is to the window.   The video captured both full frontal and rear nudity of Minor A, including the genitals/pubic area of the child.   Minor A's pre-pubescence is evident from the absence of secondary sexual characteristics such as pubic hair or developed breasts.   The recording continues as Minor A gets dressed into her pajamas on the floor just under the window.

### GUERRERO's Surveillance of Private Homes in Massachusetts

18.     Additional review of the content of GUERRERO's cellphone, including saved "notes," has revealed written notes created by GUERRERO concerning his observations of several private homes.

19.     With respect to a specific street address in Norfolk, Massachusetts, at which Minor A resides, GUERRERO wrote:

> [*Street Address of Minor A*][4]
> Two cars, mom/dad, 2 daughters, 1 son
> Thursday 3/4 – two daughters home just after 8pm, younger
> showered right away. older changed right away.
> 1st car back at 8. 2nd around 820 with son

---

[3]Minor A has been identified by her father, who was been interviewed by authorities.   Minor A was 11 years old at the time of the recording.

[4] The actual street address of Minor A is reflected in the note.

Next time try view from front yard hill and back tree.
House next door has one daughter, mom/dad. Mom and
daughter home around 8.

Monday 3/15- younger daughter to bed 8:30, parents say
goodnight. No sign of older daughter from 8:15-8:50.
Neighbors have good sight to one bedroom.   Motion lights
and dog:(

Wednesday 3/17
8-8:35
Youngest changes at 8:07, appears to be no shower today or
Monday, maybe every other day? Went into parent's room
8:10-825ish.   Oldest sitting downstairs on computer whole
Time, already changed, no shower.   Probably same thing she
Did on Monday 3/15[5]

20.    GUERRERO took notes with respect to several other private residences.    For

example, with respect to a specific street address in Franklin, Massachusetts, identified herein as

"Address 1,"[6] GUERRERO wrote:

Mom/dad and 2 sons
Thursday 3/11
6:35-650
Kids in mom's room.   Mom brushes teeth, goes to bathroom,
reads story to kids in her bed
Friday 3/12
730-8
No sign of anyone, dad came into bedroom around 8

21.    With respect to another specific street address in Norfolk, Massachusetts,

identified herein as "Address 2," GUERRERO wrote:

---

[5] The dates referenced are believed to refer to March of 2021.   In addition to the dates reflected
in the metadata above, March 4, 2021 was a Thursday, March 15, 2021 was a Monday, and
March 17, 2021 was a Wednesday.

[6] The specific street addresses, or abbreviations thereof, are written in the "notes" recorded on
the iPhone and are known to the affiant.   Those addresses are not identified herein to protect the
privacy of the residents/victims residing in those homes.

Mom/dad, daughter, son
Thursday 3/4
daughter showered maybe 7-730 on

22.     As to other specific addresses, GUERRERO wrote notes such as, "Teens?," "Good

tree," and "Good trees maybe."

23.     I submit that there is probable cause to believe that GUERRERO's recording of

Minor A depicts "sexually explicit conduct" and/or that at the time GUERRERO made the video

he was attempting to create or capture "sexually explicit conduct."[7]

24.     As relevant here, the statutory definition of "sexually explicit conduct" includes the

lascivious exhibition of the genitals or pubic area.  Based upon GUERRERO's: reported prior

juvenile adjudication for a contact sexual offense against a minor (¶11 n.1); the recent allegations

by another victim that GUERRERO committed an additional contact sexual offense against that

minor victim while GUERRERO was a juvenile (¶11 n.1); GUERRERO's efforts to surreptitiously

record minors using bathrooms and changing rooms at the Wrentham Mall (¶¶4-7); GUERRERO's

surreptitious recording of minors, using the bathroom and shower, (¶¶9-11); the fact that

GUERRERO conducted surveillance and kept notes of his observations of multiple private homes,

including specific notes of times when family members used the bathroom, went to bed, showered,

or changed clothes (¶¶18-22); the fact that GUERRERO conducted surveillance of the home of

Minor A on multiple occasions prior to recording the video of Minor A, taking specific written

notes of when Minor A and her siblings changed clothes, showered, and went to bed (¶19); the

---

[7] The Court viewed screen captures from the video of Minor A and from the videos of the
minors described in paragraphs 11-12 in authorizing the federal search warrant to search
GUERRERO's phone for evidence of violations of 18 U.S.C. §2251.   The video of Minor A, the
video of the minors identified in paragraphs 11-12, and/or screen captures, are available for
review at the Court's request.

fact that GUERRERO filmed more than one video at the home of Minor A (¶¶13-17); and the fact that GUERRERO climbed onto a roof of the home in order to record Minor A in her bedroom at a time GUERRERO knew from his prior surveillance efforts that Minor A was likely to be unclothed (¶¶16-17, 19); I submit that the recording of Minor A was clearly "intended or designed to elicit a sexual response in the viewer" and/or that GUERRERO created or was attempting to create such a recording.[8]

## CONCLUSION

25.     Based on all of the foregoing, I submit that there is probable cause to believe that on or about March 17, 2021, in the District of Massachusetts, GUERRERO did knowingly employ, use, persuade, induce, entice and coerce, Minor A, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and the visual depiction was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer and did attempt to do so.

Sworn to under the pains and penalties of perjury,

/s/ Geoffrey Kelly

_____
GEOFFREY KELLY
Special Agent
Federal Bureau of Investigation

Sworn to before me telephonically pursuant to Fed. Rule Crim. P. 4.1 on April 12, 2022.

_____
M. Page Kelley
Chief United States Magistrate Judge

---

[8] See *United States v. Amirault*, 173 F.3d 28, 31 (1st Cir. 1999), *citing United States v. Dost*, 636 F.Supp. 828 (S.D.Cal. 1986), *aff'd sub nom., United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)).

## ATTACHMENT A-1

## PREMISES TO BE SEARCHED

The property to be searched, 1830 CAMPOS AVE., WOODLAND, CA 95776, is further described as a tan color home with brown tile roof.  The number 1830 is located to the left of the brown front door.  An image of the property from street level is attached below:



The place to be searched includes all rooms, attics, basements, and all other parts therein, and surrounding grounds, garages, storage rooms, or outbuildings of any kind, attached or unattached, located at the SUBJECT RESIDENCE; any computer, digital devices, and digital media located therein, under the access and control of GUERRERO, where the items specified in Attachment B may be found; all vehicles located at the SUBJECT RESIDENCE which fall under the dominion and control of GUERRERO; and all internal and external compartments and all containers that may be associated with the storage of child sexual abuse material or their instrumentalities contained within the aforementioned places or vehicles.

2

**ATTACHMENT A-2**

**PERSON TO BE SEARCHED: JACOB GUERRERO**

JACOB GUERRERO is a male, approximately 5 feet, 8inches tall and 130 pounds, with brown hair and brown eyes. GUERRERO's date of birth is 5/3/1998.  Attached below is a photograph of GUERRERO dated 9/3/21 :



The search of GUERRERO shall include GUERRERO's person, clothing, and personal belongings, including backpacks, briefcases, and bags that are within his immediate vicinity and control, at the location where the search warrant is executed within the Eastern District of California, and that may contain the items called for by Attachment B to this warrant.  It shall not include a body cavity or strip search.

3

## **ATTACHMENT A-3**

A 2004 Gray Mitsubishi Eclipse, Massachusetts registration 9ZJ436.

4

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Section 2251 and/or Title 18 United States Code, Section 2252:

1. Computers or storage media used as a means to commit the violations described above.

2. Cameras, pen cameras, or other devices used to capture surreptitious recordings;

3. Images or depictions of child pornography in whatever form;

4. Videos depicting the surreptitious recording of others;

5. Evidence of the identity of any individual depicted in items 1-4;

6. Notes or other written documentation, in whatever form, of surveillance conducted by GUERRERO of families or minors;

7. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.   evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.   evidence of the lack of such malicious software;

d.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.   evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.   evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.   evidence of the times the COMPUTER was used;

i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.   records of or information about Internet Protocol addresses used by the COMPUTER;

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite"

2

web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

8. Routers, modems, and network equipment used to connect computers to the Internet.

9. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to GUERRERO's surveillance of others, including, but not limited to, notes of observations of families and children in their homes and the times that children change or shower;

10. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to GUERRERO's sexual interest in children or minors;

11. In any format and medium, all originals, computer files, copies, and negatives of images of child pornography as defined in 18 U.S.C. 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. 2256(2), or child erotica, including but not limited to sexually explicit images.

12. Records, information, and items relating to violations of the statutes described above including:

a. Records, information, and items relating to the occupancy or ownership of the SUBJECT PREMISES, including utility and telephone bills, mail envelopes, or addressed correspondence;

3

b.  Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

c.  Any and all records, documents, invoices, and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs, or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

d.  Records and information relating to the identity or location of the persons suspected of violating the statute described above;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

4

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br><br>Residence Located at:  1830 CAMPOS AVENUE,<br>WOODLAND, CALIFORNIA 95776 )<br>)<br>)<br>)<br>) | Case No.    2:22-sw-0273 KJN<br><br>**SEALED** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENT A-1, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐  for  30  days *(not to exceed 30)*  ☐  until, the facts justifying, the later specific date of _____ .

Date and time issued:    04/13/22 at 4:20 p.m.

*Judge's signature*

City and state:      Sacramento, California                Kendall J. Newman, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
            Signature of Judge                                                        Date

## ATTACHMENT A-1

## PREMISES TO BE SEARCHED

The property to be searched, 1830 CAMPOS AVE., WOODLAND, CA 95776, is further described as a tan color home with brown tile roof.  The number 1830 is located to the left of the brown front door.  An image of the property from street level is attached below:



The place to be searched includes all rooms, attics, basements, and all other parts therein, and surrounding grounds, garages, storage rooms, or outbuildings of any kind, attached or unattached, located at the SUBJECT RESIDENCE; any computer, digital devices, and digital media located therein, under the access and control of GUERRERO, where the items specified in Attachment B may be found; all vehicles located at the SUBJECT RESIDENCE which fall under the dominion and control of GUERRERO; and all internal and external compartments and all containers that may be associated with the storage of child sexual abuse material or their instrumentalities contained within the aforementioned places or vehicles.

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Section 2251 and/or Title 18 United States Code, Section 2252:

1. Computers or storage media used as a means to commit the violations described above.

2. Cameras, pen cameras, or other devices used to capture surreptitious recordings;

3. Images or depictions of child pornography in whatever form;

4. Videos depicting the surreptitious recording of others;

5. Evidence of the identity of any individual depicted in items 1-4;

6. Notes or other written documentation, in whatever form, of surveillance conducted by GUERRERO of families or minors;

7. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.   evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.   evidence of the lack of such malicious software;

d.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;

e.   evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.   evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.   evidence of the times the COMPUTER was used;

i.   passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.   documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.   records of or information about Internet Protocol addresses used by the COMPUTER;

l.   records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite"

> web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and
>
> m.  contextual information necessary to understand the evidence described in this attachment.

8. Routers, modems, and network equipment used to connect computers to the Internet.

9. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to GUERRERO's surveillance of others, including, but not limited to, notes of observations of families and children in their homes and the times that children change or shower;

10. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to GUERRERO's sexual interest in children or minors;

11. In any format and medium, all originals, computer files, copies, and negatives of images of child pornography as defined in 18 U.S.C. 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. 2256(2), or child erotica, including but not limited to sexually explicit images.

12. Records, information, and items relating to violations of the statutes described above including:

> a.  Records, information, and items relating to the occupancy or ownership of the SUBJECT PREMISES, including utility and telephone bills, mail envelopes, or addressed correspondence;

b.  Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

c.  Any and all records, documents, invoices, and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs, or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

d.  Records and information relating to the identity or location of the persons suspected of violating the statute described above;

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.